UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LILIAN ILETO, on behalf of the Estate of JOSEPH ILETO, | CASE NO. C06-1583-JCC |
| Plaintiff, | ORDER |
| vs. | |
| LOANER TOO a/k/a LOANER II, LOANER, INC., LOANER TWO PAWNSHOP, LOANER PAWN SHOP, THE ESTATE OF JOHN St. JOHN, and DAVID McGEE | |
| Defendants. | |

Defendants Loaner Too (a/k/a Loaner II, Loaner, Inc., Loaner Two Pawnshop, The Loaner Pawn Shop), the Estate of John St. John, and David McGee each individually move this Court for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) (Dkt. Nos. 23, 26 and 29).[1] The Court, having considered all the papers filed regarding these motions, has found that oral argument is not necessary. The Court DENIES Defendants' motions for summary judgment and rules as follows.[2]

---

[1] The motions allege the same facts and raise essentially identical legal issues.

[2] Defendants Loaner Pawnshop and Mr. McGee also move to strike Plaintiff's opposition to their summary judgment motions because she filed it two days late. (Dkt. Nos. 35 and 37.) Per Local Rule CR 7(d)(3), Plaintiff should have filed her opposition no later than Monday, August 27, 2007, but instead, filed it on August 29, 2007. Accordingly, Loaner Pawnshop and Mr. McGee request that the Court strike

ORDER - 1

## I. FACTUAL BACKGROUND

This lawsuit stems from the tragic events of August 10, 1999, in which Bufford Furrow, Jr., shot and injured several young children, one teenager, and an adult at the North Valley Jewish Community Center ("JCC") in Granada Hills, California. (Def. Loaner Mot. 2 (Dkt. No. 26).) Furrow, a known neo-Nazi, specifically targeted the children because they attended the JCC. *Id.* Furrow fled the JCC with his weapons and, later that day, shot and killed Joseph Ileto, a United States Postal worker who was delivering mail in Chatsworth, California. (Am. Compl. ¶¶ 3.2–3.3 (Dkt. No. 13).) Throughout his crime spree, Furrow had several weapons in his possession, including a Glock Model 26, 9 mm handgun ("Glock handgun"). *See Ileto v. Glock, Inc.,* 421 F.Supp.2d 1274, 1279 (C.D. Cal. 2006). When Furrow purchased these guns and at the time of the shooting, federal law prohibited him from possessing, purchasing, or using any firearm. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1195 (9th Cir. 2003).[3]

After the shootings occurred, the United States Department of Treasury, Bureau of Alcohol, Tobacco and Firearms ("ATF") discovered that the Glock handgun had been pawned at The Loaner Pawnshop in Everett, Washington. (McGee Dep. 145–46 (Dkt. No. 27-2 at 24–25).)[4] At the time of the pawn transaction, John St. John, now deceased, was the owner and sole shareholder of the pawnshop.

---

the opposition as untimely. Plaintiff, in response to the motions to strike, filed a motion to file her opposition late. (Dkt. No. 39.) Plaintiff's counsel claims that he was out of town on August 27 and the opposition was not timely filed due to the "ignorance and inexperience" on the part of his staff. (*Id.* at 2.) While responsibility for ensuring compliance with the rules of civil procedure rests entirely with the attorney, not legal staff, Defendants failed to show that they were prejudiced by Plaintiff's inadvertent error. Accordingly, the Court DENIES the motions to strike and GRANTS Plaintiff's motion to file her opposition late.

[3]Furrow had been committed to a psychiatric hospital in 1998, indicted for a felony in 1998, and convicted of assault in the second degree in 1999 in Washington state. *Ileto*, 349 F.3d at 1195 n.4. Federal law prohibits a person with a mental defect who has been committed to a mental institution and/or convicted of a felony from purchasing a gun. 18 U.S.C. § 922(d).

[4]Within days of the shooting, the ATF performed an audit of the pawnshop's accounts and files, including all documentation related to Furrow's pawn transactions. *Id*. Defendants claim that the ATF did not provide prior notice to the pawnshop about the scope of its audit. (Def. Loaner Mot. 3 (Dkt. No. 26) Defendants further assert that the ATF did not issue a citation, infraction or other penalty to the pawnshop at the conclusion of its investigation. (St. John Aff. ¶¶ 9–10 (Dkt. No. 27-2 at 1–2.)

ORDER - 2

(Am. Compl. ¶ 2.3 (Dkt. No. 13 at 3).) Defendant David McGee was employed at the pawnshop and is an heir to the St. John Estate. (*Id*. at ¶ 2.4.)

On August 9, 2000, Plaintiff, Mr. Ileto's sole surviving dependent parent, and three of the children who were shot at the JCC filed a lawsuit in the Los Angeles Superior Court. (Calif. State Court Compl. (Dkt. No. 27 at 3).) Plaintiff alleged survival and wrongful death, and all the plaintiffs in that case alleged public nuisance and negligence claims against multiple defendants involved in the manufacturing, marketing, and distribution of the firearms found in Furrow's possession, including current Defendants Loaner and David McGee. (*Id*.) Specifically, the plaintiffs claimed that:

> [the] defendants market, distribute, promote and sell firearms, a lethal product, with reckless disregard for human life . . . . They have knowingly created, facilitated and maintained an over-saturated firearms market that makes firearms easily available to anyone intent on crime. The particular firearms used in [the August 10, 1999] incidents were marketed, distributed, imported, promoted and sold by defendants in the manner set out herein, which defendants knew or should have known facilitates and encourages easy access by persons intent on murder, mayhem, or other crimes, including legally prohibited purchasers such as Furrow.

(*Id*. at ¶ 26 (Dkt. No. 27 at 13).) The plaintiffs further alleged that the defendants failed to take even minimal precautions to prevent or diminish the secondary criminal market. (*Id*. at ¶ 25.)

The plaintiffs asserted, in a general manner, the above allegations against Loaner and Mr. McGee, but also specifically claimed that:

> [The Loaner Pawn Shop] and [Mr. McGee] frequently bought and sold many firearms from and to Furrow, knew Furrow personally, and had at least a reasonable basis for concluding that Furrow, if in possession of firearms, was a danger to others . . . [n]evertheless . . . [they] provided the [Glock handgun] . . . to Furrow, which Furrow used to kill Joseph Ileto.

(*Id*. at ¶ 77 (Dkt. No. 27 at 23).)

Loaner and Mr. McGee moved to dismiss the plaintiffs' claims against them for lack of personal jurisdiction. (Judgment Dismissing Loaner & McGee (Dkt. No. 27 at 36–38).) In support of their motions to dismiss, Loaner and Mr. McGee filed a sworn declaration by Mr. St. John. (St. John Aff. (Dkt. No. 27 at 63).) Attached to the declaration were several Federal Firearm Registration 4473 Forms, including the Form 4473 dated October 12, 1998, which purported to contain the signature of Furrow. (Dkt. No. 27-2 at 4–17.) Mr. St. John represented to the California court that the documents, including

ORDER - 3

the October 12, 1998 Form 4473, were "true copies of the records of those pawn transactions involving Furrow." (St. John Aff. ¶ 6 (Dkt. No. 27-2 at 1).) On December 21, 2000, the court dismissed without prejudice Loaner and Mr. McGee from the case. (Judgment Dismissing Loaner & McGee (Dkt. No. 27 at 36–38).)

The remaining California defendants removed the case to federal district court and filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). The court granted the motions in May 2002 and the plaintiffs appealed. The appeal to the Ninth Circuit consumed almost three years. (Withey Decl. ¶ 8 (Dkt. No. 33).) During this time, all discovery was stayed by the district court. (*Id*. at ¶ 9.) It was not until January 2005 when the lawsuit was remanded to the district court that discovery proceedings and further investigation by plaintiffs ensued. (*Id*.) This discovery included, for the first time, deposition and document discovery related to the Glock handgun used to kill Mr. Ileto. (*Id*.)[5]

In 2005, Plaintiff's counsel obtained permission from the United States Bureau of Prisons to interview Furrow. (*Id*.)[6] Plaintiff claims that it was during this interview that Furrow informed Plaintiff's counsel's investigator, for the first time, that he did not sign the October 12, 1998 Form 4473 pertaining to the Glock handgun. (*Id*.) Plaintiff further asserts that it is during this interview that she first discovered, or had reason to discover, that contrary to Mr. St. John's sworn declaration to the California district court that the October 12, 1998 Form 4473 was "true," it must in fact have been forged by someone at The Loaner Pawnshop to cover up the fact that it had failed to require Furrow to fill out the form when he obtained the Glock handgun. (Pl. Opp. 9 (Dkt. No. 32).)

Thereafter, on November 1, 2006, Plaintiff filed the present lawsuit. She alleges that prior to providing Furrow with the Glock handgun, Loaner, Mr. St. John and Mr. McGee, negligently failed to: (1) adequately investigate Furrow's criminal and mental health history; (2) require Furrow to complete the mandatory federal firearm reporting forms; (3) comply with state and federal firearm laws; and (4)

---

[5]All discovery was stayed once again on November 15, 2005, after Congress passed an immunity bill for the firearms industry. (Pl. Opp. 8 (Dkt. No. 32).)

[6]Plaintiff does not specify the exact date of the interview.

ORDER - 4

1  adequately train and supervise their employees in the proper manner of complying with state and federal
2  firearm laws. (Am. Compl. ¶ 1.2 (Dkt. No. 13).) Plaintiff alleges that Defendants' negligence was the
3  proximate cause of Joseph Ileto's death. (*Id.*) Plaintiff further asserts that Defendants fraudulently
4  concealed from her their negligence by falsely completing the Form 4473 and forging Furrow's signature
   on it. (*Id.* at ¶ 5.1.) As a result of Defendants' fraudulent concealment, Plaintiff alleges that the factual
5  basis of Plaintiff's claims were not reasonably discovered or discoverable until within three years of the
6  date she filed the present action. (*Id.* at ¶ 5.3.)

7  Defendants move for summary judgment arguing that Plaintiff's claims are barred by Washington
8  State's three-year statute of limitations.

## II. APPLICABLE STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. Mere disagreement, or the bald assertion that a genuine issue of material fact exists, does not preclude summary judgment. *See California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. Material facts are those which might affect the outcome of the suit under governing law. *See id.* In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747).

## III. ANALYSIS

ORDER - 5

Defendants argue that Plaintiff's claims are barred by Washington State's three-year statute of limitations because they accrued more than seven years ago when Furrow shot and killed Joseph Ileto on August 10, 1999.[7] Plaintiff acknowledges that the conduct of which she complains occurred more than three years before she filed the present lawsuit. However, she argues, defendants are equitably estopped from asserting the limitations period as a defense because defendants fraudulently concealed the factual basis of her claims for relief. Defendants counter that their alleged fraudulent concealment did not toll the statute of limitations for the following two reasons: (1) plaintiff did not sufficiently plead facts to establish fraudulent concealment, and (2) plaintiff had actual or constructive knowledge of the factual basis of her claims as early as August, 2000 when she filed suit in California.

### A.   Plaintiff Sufficiently Plead Fraudulent Concealment

Plaintiff claims that the statute of limitations was tolled by Defendants' attempt to fraudulently conceal the factual basis of her claims. Defendants misinterpret this as a claim that the limitations period was tolled by Washington's discovery rule. The discovery rule is a separate concept from the doctrine of fraudulent concealment. These two doctrines apply to related but distinct legal problems—the discovery rule deals with injuries and causes that are inherently difficult to detect, while the fraudulent concealment doctrine concerns affirmative conduct that is designed to conceal a cause of action. *See Giraud v. Quincy Farm & Chem.*, 6 P.3d 104, 111 (Wash. Ct. App. 2000) (distinguishing the two doctrines in the context of Washington's warranty limitations period). The discovery rule relates to when a plaintiff's claims accrued, while the fraudulent concealment doctrine is available to prevent fraudulent or inequitable resort to the statute of limitations as a defense. *See Wood v. Gibbons*, 685 P.2d 619, 621 (Wash. Ct. App. 1984), *review denied*, 103 Wn.2d 1009 (1984) (citing *Central Heat, Inc. v. Daily Olympian, Inc.*, 443 P.2d 544 (Wash. 1968)); *Duke v. Boyd*, 942 P.2d 351, 353–54 (Wash. 1997) (holding that fraudulent concealment indefinitely tolls statute of limitations in context of medical malpractice statute); *Rutledge v.*

---

[7]The parties do not dispute that Washington State's limitations period applies to this case, or that the applicable period is three years. *See* RCW 4.16.080(2). In ruling on statute of limitations questions, a federal court must apply the law of the forum state. *Guaranty Trust Co. v. York*, 326 U.S. 99, 108-9 (1944); *Flowers v. Carville*, 310 F.3d 1118, 1123 (9th Cir. 2002).

ORDER - 6

*Boston Woven Hose and Rubber Co.*, 576 F.2d 248, 249–50 (9th Cir. 1978) (doctrine of fraudulent concealment applies to toll the statute of limitations when defendant misrepresented or concealed facts essential to plaintiff's cause of action).

This distinction is important, among other reasons, because it dictates what Plaintiff must plead in order to sufficiently state a basis to estop Defendants from asserting the limitations period as a defense. To establish fraudulent concealment, Plaintiff must allege facts showing affirmative conduct on the part of Defendants which would, under the circumstances of the case, lead a reasonable person to believe that she did not have a claim for relief. *See Wood,* 685 P.2d at 621 (plaintiff must demonstrate that defendant actively concealed or misrepresented facts that prevented plaintiff from discovering claim); *Giraud*, 6 P.3d at 110 (citing *Klehr v. A.O. Smith Corp.*, 87 F.3d 231, 237 (8th Cir. 1996)), *aff'd*, 521 U.S. 179 (1997) (plaintiff must show that defendant engaged in affirmative conduct designed to prevent plaintiff from becoming aware of claim); *Easter v. Am. West Fin.*, 381 F.3d 948 (9th Cir. 2004) (applying Washington law). Plaintiff must also establish actual subjective knowledge by Defendants of the wrong done. *Giraud*, 6 P.3d at 110 (citing *Taylor v. Wilmington Med. Ctr., Inc.*, 538 F. Supp. 339, 342 (D.C. Del. 1982)).[8]

Plaintiff alleges in her Amended Complaint that Defendants fraudulently concealed her wrongful death and survivorship causes of action by forging Furrow's signature on the Form 4473 and then representing to the California court that the form was accurate. She further alleges that Defendants inappropriately filled in the form after Furrow committed his crime spree and Defendants became aware of his involvement. She claims that Defendants did this with the intent to mislead Plaintiff as to her potential causes of action. Such allegations, if proven, are sufficient to equitably prohibit Defendants from

---

[8]Contrary to Defendants' assertions, Plaintiff does not need to establish that Defendants owed her an affirmative duty to disclose material facts. A duty of disclosure is not a required element when the plaintiff alleges affirmative misrepresentations by the defendant. *See Dussault v. AIG, Inc.,* 99 P.3d 1256, 1261 (Wash. Ct. App. 2004) (citing *Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996)); *Haberman v. Wash. Pub. Power Supply Sys.*, 744 P.2d 1032, 1069–70 (Wash. 1987) (stating that a defendant may be liable for concealment for misstatements absent privity when the defendant knows that information will be passed on to the plaintiff).

ORDER - 7

asserting the statute of limitations as a defense. Therefore, the Court finds that Plaintiff has pled facts alleging fraudulent concealment with sufficient particularity.[9]

### B. A Genuine Issue of Material Fact Exists as to When Plaintiff Discovered or Should Have Discovered the Factual Basis of Her Claims

Defendants argue that Plaintiff's tolling argument fails because she had the requisite knowledge necessary to start the running of the statute of limitations period no later than August 9, 2000, when she originally filed suit in California. Defendants contend that the allegations pled in the California lawsuit demonstrate that Plaintiff had actual knowledge of the factual basis of her claims.[10]

The Court disagrees. The California lawsuit involved a specific theory of liability: that the defendant gun manufacturers, retailers and distributors created an illegal "secondary market" for firearm sales to criminals. *See Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199 (9th Cir. 2003). Nowhere in the complaints filed in the California suit is there an allegation that any of the defendants were negligent for failing to require Furrow to complete a Form 4473 or that Mr. St. John failed to adequately train his employees to comply with federal and state firearm laws. Nor is there any reference to the fact that the Form 4473 attached to Mr. St. John's October 11, 2000 declaration might be forged.

Defendants snatch the words "negligence" and "fraud" out of context from the California complaints in a futile effort to argue that Plaintiff's present claims are substantially the same as the claims she originally asserted in California. However, review of the California complaints clearly shows that the allegations of "negligence" or "fraud" in the manufacturing and marketing of guns in a secondary criminal gun market were in no way related to Defendants' alleged failure to meet their duty of care in transferring

---

[9]The St. John Estate also claims that Plaintiff did not assert its fraudulent concealment claims against the Estate. However, paragraph 5.1 of the Amended Complaint specifically references all of the Defendants.

[10]Specifically, Defendants assert that Plaintiff knew that Furrow shot and killed her son with the Glock handgun that he acquired from Loaner. Plaintiff was also knew that Defendants Mr. McGee and Mr. St. John were the sole shareholder and manager, respectively, of the pawnshop. And, by October 11, 2000, when Mr. St. John filed his declaration in support of Loaner's and McGee's motions to dismiss for lack of jurisdiction, Plaintiff had in her possession all of the documents reflecting the transactions between Furrow and the pawnshop.

ORDER – 8

the Glock handgun to Furrow without a properly and timely executed Form 4473.

Defendants also argue that Plaintiff was put on constructive notice that the Form 4473 may have been forged by the fact that she came into possession of it when it was filed with the California court on October 11, 2000. The cases Defendants cite for this proposition stand for the well-settled principle that when a document is placed into evidence in a court of law, an opposing party is deemed to have knowledge of the contents of that document. *See Strong v. Clark*, 352 P.2d 183, 184 (Wash. 1960); *Western Wash. Laborers-Employers Health and Sec. Trust Fund v. Harold Jordan Co., Inc.*, 760 P.2d 382, 385 (Wash. Ct. App. 1988). None of the cases cited by defendants stand for the untenable proposition that notice of fraud is imputed to a victim of fraud simply by filing the fraudulent document in a public record.

Next Defendants argue that Plaintiff failed to allege facts showing that she exercised due diligence in trying to ascertain the accuracy of the Form 4473. Indeed, Defendants argue, Plaintiff failed to investigate her claims at all. As such, the Court should charge Plaintiff with the knowledge a diligent inquiry would have revealed had Plaintiff conducted such an inquiry.

Plaintiff responds that the first time she received notice that the Form 4377 was possibly forged was in 2005 when her attorney's investigator interviewed Furrow in prison. Plaintiff alleges that during this interview, the investigator showed Furrow the Form 4377 and Furrow informed the investigator that he had not filled out or signed the form. Plaintiff further asserts that she was restricted from investigating the authenticity of the Form 4377 any sooner than 2005 because discovery in the California case was stayed for three years pending the appeal to the Ninth Circuit. Therefore, there was no reason to interview Furrow about the Glock transaction, indeed Plaintiff was prohibited from doing so, until the district court's dismissal was reversed and discovery was reopened in 2005.

Defendants counter this argument on two grounds. Both are unpersuasive. First, Defendants argue that Plaintiff was not entitled to rely on Mr. St. John's sworn statement that the Form 4377 was accurately completed by Furrow. According to the defense theory, Plaintiff should not have believed Mr. St. John, but instead should have questioned the authenticity of the documents. This is a question for the jury to decide. Reasonable minds could differ as to when Plaintiff should have discovered that the Form

ORDER - 9

4377 might have been forged, thereby rendering this issue inappropriate for summary adjudication. *See Money Savers Pharmacy, Inc. v. Koffler Stores*, 682 P.2d 960, 964–65 (Wash. Ct. App. 1984).

Second, Defendants argue that the Court must strike the portion of Michael Withey's[11] declaration filed in support of Plaintiff's Opposition in which he states that it was during the Furrow interview in 2005 that Plaintiff discovered for the first time that the Form 4377 may have been forged. Defendants object to this statement on the basis that it contains inadmissible hearsay.

Defendants misunderstand the hearsay rule. Under Federal Rule of Evidence 801, "hearsay" is a statement, other than one made by the declarant while testifying at trial, offered to prove the truth of the matter asserted. FED. R. EVID. 801(c). However, Mr. Withey's statement is being offered to prove when he (and thereby the Plaintiff) was put on notice of the potential that the Form 4377 was forged. The statement is not being offered for the truth of the matter asserted, and therefore, is not hearsay. The same holds true for the investigator's statement to Mr. Withey. Accordingly, the Court denies Defendants' motion to strike the disputed portion of Mr. Withey's declaration. The Court further finds that a genuine issue of material fact exists as to when Plaintiff discovered or should have discovered that the Form 4377 might have been forged, thereby making summary judgment inappropriate at this time.

### III. CONCLUSION

Based on the foregoing, Defendants' Motions for Summary Judgment (Dkt. Nos. 23, 26, 29) are hereby DENIED, Plaintiff's Motion to File Opposition Late (Dkt. No. 39) is GRANTED, and Defendants' Motions to Strike Plaintiff's Opposition are DENIED.

DATED this 26th day of November, 2007.

John C. Coughenour
United States District Court Judge

---

[11] Mr. Withey is Plaintiff's counsel.

ORDER - 10